UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Tamica Davis, § § § *Plaintiff*, § § v. § § Allied Universal Security Services, Charles § Schwab & Co, Inc., and Mercedes-Benz § Financial Services USA LLC, § § *Defendants*. § § | Civil Action No. 4:25-cv-1349 COMPLAINT JURY DEMAND |

Plaintiff Tamica Davis ("Plaintiff"), by her counsel, Harman Green LLC, alleges for her Complaint against Defendants Allied Universal Security Services, Charles Schwab & Co, Inc., and Mercedes-Benz Financial Services USA LLC ("Defendants") as follows:

**PRELIMINARY STATEMENT**

1. This case is about race discrimination against Plaintiff, a Black woman, and the retaliation she faced after complaints of the use of the word "nigga."

2. After Plaintiff complained about the use of the word nigga in the workplace, she was immediately suspended and reassigned to another location.

3. As well, Plaintiff requested a reasonable accommodation in the form of working with an adjustable chair, but that request was denied outright.

**JURISDICTION**

4. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

5. Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State law claims as they arise out of the same nucleus of operative fact so as to create the same case or

1

controversy.

6. Plaintiff timely filed with the Equal Employment Opportunity Commission, Charge number 450-2025-10590, and received a Right to Sue letter on September 2, 2025. This case was filed within 90 days of receipt of that Right to Sue Letter.

## PARTIES

7. Plaintiff was and is a resident of Texas.

8. Defendant Allied Universal Security Services has a headquarters at 450 Exchange, Irvine, CA 92602.

9. Defendant Mercedes-Benz Financial Services USA LLC is a subsidiary of Mercedez-Benz, and has a location at 14372 Heritage Parkway, Fort Worth, TX 76177.

10. Defendant Charles Schwab & Co, Inc. has an address at 3000 SCHWAB WAY, WESTLAKE, TX, UNITED STATES, 76262, and may be served through C T CORPORATION SYSTEM, 28 LIBERTY ST., NEW YORK, NY, 10005.

## JURY DEMAND

11. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

12. Plaintiff is a Black woman and has been employed by Defendant Allied Universal Security Services as a security guard since January 2025.

13. Plaintiff performed worked for Defendant Allied Universal Security Services at two locations, one with Mercedes-Benz Financial Services USA LLC and one for Charles Schwab & Co, Inc.

14. Plaintiff performed work for Defendant Mercedes-Benz Financial Services USA LLC, at 14372 Heritage Parkway, Fort Worth, TX 76177 and maintained a Mercedes Benz email address.

15. Defendants Allied Universal Security Services and Mercedes-Benz Financial

Services USA LLC were joint employers of Plaintiff such that each managed Plaintiff's schedule, controlled Plaintiff's job duties and maintained obligations to control bad and illegal conduct in the workplace.

16. Defendants Allied Universal Security Services and Charles Schwab & Co, Inc. were joint employers of Plaintiff such that each managed Plaintiff's schedule, controlled Plaintiff's job duties and maintained obligations to control bad and illegal conduct in the workplace.

17. Plaintiff worked under Joseph Niezgoda, Allied Universal Security Site Manager, Mercedes Benz Financial Services, MBFS USA LLC.

18. In one of her first interactions with Mr. Niezgoda, he asked her whether she was a "DEI hire" at her last job.

19. During her training in January 2025, a white coworker, Tucker Mitchell, told Plaintiff that the particular Mercedes location she worked for terminated a Black supervisor because she "only hired Black employees" and was believed to discriminate against other races.

20. Mr. Mitchell then stated that the supervisor was a racist.

21. This was said to Plaintiff and three other employees who were not Black.

22. Plaintiff was made very uncomfortable that employees were so quick to label a Black supervisor as a 'racist' based only on rumors.

23. Plaintiff also worked with supervisor Kelton Gayoso.

24. For many months, Plaintiff had been tormented by Mr. Gayoso.

25. Mr. Gayoso would constantly refer to Plaintiff as "girl" in the workplace.

26. Plaintiff complained that this was offensive.

27. Plaintiff complained calling her "girl" was offensive because it has a long, negative historical stereotype.

28. Calling a Black woman "girl," or a Black man "boy," is a product of racism.

29. Despite her numerous complaints, this persisted.

30. Mr. Niezgoda also referred to Plaintiff's sister, who is Black and has 20 years of experience working for Homeland Security, as "girl."

31. Supervisor Gayoso constantly referred to Plaintiff as "girl" in a harassing and derogatory manner.

32. On at least one occasion, Plaintiff Gayoso complained about Black History "Month" and said that it should be condensed to a day or a few days.

33. On June 20, 2025, Plaintiff made a formal complaint to Mr. Niezgoda, Allied Universal Security Site Manager, Mercedes Benz Financial Services, MBFS USA LLC, about Mr. Gayoso's discriminatory comments.

- Plaintiff's formal complaint was the following: "Hello, I wanted to follow up with you concerning our conversation from earlier regarding Kelson G. about the racial insensitive remarks he has made since my employment at this site. I know what I said earlier but after further processing my experiences with him I believe it is in my best interest to no longer work with him. He's had several opportunities over the course of 4 months or so to correct his behavior, but has failed to do so. This month alone he's told me to walk with a basket on my head out of the blue . He's continued to call me "girl" which I have explained to him several times that it is inappropriate and offensive to refer to a woman my age as "girl". To add, I eventually informed him that it is demeaning to call black adults "girls" and "boys" as it is a know[n] racist term. However, he continued to do so. Also, while drawing a cartoon last month of an African American girl with braided hair he felt free to share that black women wear braided hair and weave, due to not having any hair of their own. Last week he

4

> caught me off guard and I jumped because I was startled, and he mocked me stating that I'm afraid of white people. This morning, he told me that he should say what he was about to say and that he doesn't want to come across any type of way, so I told him if he feel that way, then he should refrain from saying what he was thinking. However, he ignored me and told me that he believes that black history month should [not] be the entire month and that if black people want white people to care then it should be condensed to a day up to a few days. I don't require an apology from him and neither do I desire an apology. I just prefer that he no longer work with me. I have enough to deal with and I don't want to continue dealing with this on my job and I want it to end as soon as possible. Although I'm not feeling well and I am uncomfortable I still came in to work. Sadly, my blood pressure and pulse rate is elevated. However, I will try and finish my shift.

34. Mr. Niezgoda stated that Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC "will work towards a fair outcome solution so we all can feel comfortable."

35. Plaintiff was, shortly thereafter, put on unpaid suspension.

36. Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC refused to allow Plaintiff to work at any other work sites.

37. On June 26, 2025, Mr. Mitchell shared a story with Plaintiff during which he said the word nigga in the context of story.

38. Mr. Mitchell went on to tell Plaintiff that he and his white male friends were in college discussing whether or not they could use the "N-word," which, according to him, was a normal topic for them to discuss.

39. The situation caught Plaintiff off guard, and Plaintiff felt like a deer in the headlights, trying to maintain composure while assuming there might be a point to his story.

40. Mr. Mitchell stated that he told his friend John that white people should not say the N-word and that they discussed the difference between "-gga" and "-gger" in relation to the word.

41. Mr. Mitchell made a point to spell out both endings.

42. Mr. Mitchell further stated that his Black friend, Clint, walked into the room shocked and expressed concern about the topic of conversation.

43. Mr. Mitchell explained that John wanted to use the N-word, but Clint strongly expressed that he would not give him permission to do so.

44. Plaintiff was then told that John then suggested that he could refer to himself as "wigga" instead of "nigga."

45. Plaintiff remained composed and professional, although in a state of shock.

46. Plaintiff was offended by the use of the word and reported it, and reported Mr. Mitchell for the use of the word nigga.

47. Plaintiff recorded a conversation with Mr. Mitchell where he admits to use of the word nigga in the workplace.

48. Plaintiff then spoke with Mr. Niezgoda, and asked that she no longer be subordinate to Mr. Mitchell as she was offended by his use of the word nigga.

49. Joe's response was to laugh at Plaintiff and dismissed her.

50. Plaintiff presented the recording to human resources as evidence of a workplace hostile to her race and one that she was uncomfortable with.

51. Plaintiff was then suspended.

52. Plaintiff complained of this on July 8, 2025, specifically saying "Unfortunately, this feels like a punishment for me as I have already lost 5 day of income."

53. Plaintiff also asked to speak with supervisors in human resources to ensure that all of the witnesses she identified were interviewed. Those witnesses were not interviewed, and after Plaintiff elevated the concern, the investigation was promptly concluded.

54. In response, on July 18, 2025, Defendant Allied Universal Security Services's human resources responded that: "We have concluded our investigation into the recent complaint of inappropriate conduct – inappropriate conversations in the workplace and recording of conversations. The alleged recording has created an uncomfortable environment for your coworkers and therefore your removal from that assignment was requested. Our investigation was conducted promptly, objectively, thoroughly and confidentially. Based on the information gathered, we were able to conclude that a policy violation did occur. Therefore, you have been referred to the recruiting team for new assignment options."

55. Plaintiff's complaints of discrimination led to her removal from the Mercedes-Benz worksite, but did not materially affect the coworkers engaged in discriminatory conduct.

56. On July 22, 2025, Plaintiff emailed Kelly Lewis, a regional human resources manager for Defendant Allied Universal Security Services, stating: "Hello, my name is Tamica Davis, supposedly, I am still employed with Allied Universal. I was racially targeted at work by several supervisor's causing a hostile work environment. I was also wrongfully terminated from my site and withheld from advancing to a more favorable shift etc... after making unlawful concerns known. The investigation has just ended and did find that there were inappropriate conversations transpiring at work. I have been suspended without pay going on 3 weeks. It's very heartbreaking and inconvenient that I was punished for making a report and have not yet heard from a recruiter to get me back to work."

57. Plaintiff was then offered a new work assignment on July 31, 2025, but was never paid for the period of her unfair, retaliatory suspension.

7

58. Plaintiff was then assigned to work an assignment for Charles Schwab, and again encountered racist remarks.

59. On September 10, 2025, Supervisor Shawn mentioned that a Republican was shot in the neck.

60. Plaintiff asked who he was, and why did he get shot?

61. Supervisor Shawn detoured the conversation by stating that the woman stabbed in the subway was stabbed because a "Haitian" man felt that the woman was reading his mind.

62. Afterwards, he expressed, "Haitians are fucking mean."

### Failure to Accommodate

63. Plaintiff is an individual with disabilities, including PTSD in the form of Anxiety and Depression, Angina, Tachycardia, and Lupus flares.

64. Plaintiff's major life functions are inhibited by these disabilities, including that she suffers from pain and on one occasion had to spend three days on bed rest until her flares subsided while Plainitff maintained stroke level blood pressure.

65. Plaintiff's disabilities also impair her ability to walk and to stand for long periods of time, and, as well, prevent her from sitting in certain chairs based on ergonomics.

66. Plaintiff's disabilities also cause swelling in the knees and ankles, which causes pain and limits mobility.

67. On multiple occasions, while working for Defendants Allied Universal Security Services and Charles Schwab & Co, Inc., Plaintiff requested to sit in a chair at her workstation.

68. Plaintiff, on many occasions, repeatedly informed her trainer and supervisors that her non-adjustable chair was causing her physical pain and discomfort from her neck down to her feet.

69. Plaintiff was repeatedly told to "make the best of it" and that "upper management

8

wanted non-adjustable chairs" and "that's the way it will be."

70. As well, Plaintiff was told that management does not "like people dragging around chairs" as it is a "bad look."

71. Requesting an adjustable chair is a remarkably simple, and reasonable, accommodation request.

72. Yet, Defendants Allied Universal Security Services and Charles Schwab & Co, Inc. denied the request without explanation.

## CAUSES OF ACTION
## FIRST CLAIM

**Race Discrimination under 42 U.S.C. 1981, 42 U.S.C. 2000 et seq., and Chapter 21 of the Texas Labor Law against Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC**

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

74. Under 42 USC 1981, 42 USC 1981(a), and 42 USC 1981a, Americans are afforded the right to be free from discriminatory animus based on race.

75. Under Title VII, 42 USC 2000, Americans are afforded the right to be free from discriminatory animus based on race.

76. Chapter 21 of the Texas Labor Code tracks and mirrors Title VII, which, in turn, relies on the same analysis as 42 USC 1981, and incorporates it as Texas State Law.

77. Plaintiff is a Black woman.

78. Plaintiff was repeatedly subjected to discriminatory practices.

79. Plaintiff was subjected to a severe and pervasive hostile work environment.

80. Plaintiff was constantly referred to as "girl" in the workplace in a hostile and derogatory manner, which she understood to evidence discrimination based on race.

81. Plaintiff was subjected to hearing a white coworker use the word "nigga" in the workplace.

82. Plaintiff was subjected to hearing white coworkers complaint about Black History Month.

83. Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC were aware of the ongoing harassment and did nothing to end it.

84. As such, Defendants Allied Universal Security Services and Mercedes-Benz

Financial Services USA LLC intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## SECOND CLAIM

**Retaliation under 42 U.S.C. 1981, 42 U.S.C. 2000 et seq., and Chapter 21 of the Texas Labor Law against Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC**

85. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

86. Under 42 USC 1981, 42 USC 1981(a), and 42 USC 1981a, Americans are afforded the right to be free from discriminatory animus based on race.

87. Under Title VII, 42 USC 2000, Americans are afforded the right to be free from discriminatory animus based on race.

88. Likewise, they are afforded protection from retaliation when they complain about race discrimination.

89. Chapter 21 of the Texas Labor Code tracks and mirrors Title VII, which, in turn, relies on the same analysis as 42 USC 1981, and incorporates it as Texas State Law.

90. Plaintiff is a Black woman.

91. Plaintiff was repeatedly subjected to discriminatory practices.

92. Plaintiff was subjected to a severe and pervasive hostile work environment.

93. Plaintiff was constantly referred to as "girl" in the workplace in a hostile and derogatory manner, which she understood to evidence discrimination based on race.

94. Plaintiff was subjected to hearing a white coworker use the word "nigga" in the workplace.

95. Plaintiff was subjected to hearing white coworkers complaint about Black

History Month.

96.     Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC were aware of the ongoing harassment and did nothing to end it.

97.     Plaintiff explicitly complained about being treated differently based on race.

98.     In response to her complaints of race discrimination, Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC suspended Plaintiff without pay.

99.     Ultimately, Defendant Mercedes-Benz Financial Services USA LLC effectively terminated Plaintiff and she was no longer allowed to work for Defendant Mercedes-Benz Financial Services USA LLC.

100.    Defendant Allied Universal Security Services suspended Plaintiff without pay unjustly before reassigning her.

101.    Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC collectively took action and adverse employment actions against Plaintiff for presenting evidence of race discrimination.

102.    As such, Defendants Allied Universal Security Services and Mercedes-Benz Financial Services USA LLC intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

### THIRD CLAIM

**Failure to Accommodate against Defendants Allied Universal Security Services and Charles Schwab & Co, Inc.**

103.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

104.    Under the Americans with Disabilities Act, Americans are free from disability

discrimination and must be accommodated when they identify a disability, a need for an accommodation, and a lack of an undue hardship.

105. Chapter 21 of the Texas Labor Code adopts the Americans with Disabilities Act as Texas State law.

106. Here, Plaintiff identified that she was disabled.

107. Plaintiff identified her need for an accommodation.

108. Defendants Allied Universal Security Services and Charles Schwab & Co, Inc. would not face an undue hardship by allowing Plaintiff her accommodation.

109. Defendants Allied Universal Security Services and Charles Schwab & Co, Inc. failed to accommodate Plaintiff without justification and now owe to her all wage and emotional distress damages, costs, expenses, attorney fees, and all other reief available under the law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

D.  For such other and further relief as the Court deems just and proper.

Dated:  Dallas, Texas
December 1, 2025

                                                        **HARMAN GREEN PC**

By: _____
                                                       Evan Richardson
                                                       824 Exposition Ave.,
                                                       Suite 8
                                                       Dallas, Texas 75226
                                                       (646) 248-2288
                                                       erichardson@theharmanfirm.com
                                                       *Attorneys for Plaintiff*